STATE v. PEOPLES.

(Filed November 25, 1902.)

1. JURY—*Grand Jury—Civil Rights—Constitutional Law—Negroes —Constitution of United States—Fourteenth Amendment— The Code, Sec. 1722.*

   The exclusion of all persons of the negro race from a grand jury, which finds an indictment against a negro, where they are excluded solely because of their race or color, denies him the equal protection of the laws in violation of the constitution of the United States.

2. INDICTMENTS—*Grand Jury—Motion to Quash—The Code, Sec. 1741.*

   A motion to quash an indictment against a negro is the proper remedy where negroes have been excluded from the grand jury solely on the ground of color.

INDICTMENT against Will Peoples, heard by Judge *A. L. Coble* and a jury, at April Term, 1902, of the Superior Court of MECKLENBURG County. From a verdict of guilty and judgment thereon, the defendant appealed.

*Robert D. Gilmer, Attorney-General,* for the State.
*W. H. Green,* for the defendant.

MONTGOMERY, J. A true bill for "gaming" was found against the defendant by the grand jury at April Term, 1902, of the Superior Court of Mecklenburg County, and at the same term he was tried and convicted of the offence found against him. Judgment was pronounced that the defendant be imprisoned in the county jail for six weeks, to be assigned to work on the public roads of the county, and the defendant has appealed from the judgment to this Court. On his arraignment for trial, and before plea and before the jury were empanneled, he moved, through his counsel, to quash the bill of indictment for the reasons substantially stated as follows:

1. Because the list of thirty jurors drawn by the County Commissioners and summoned by the Sheriff, from which the grand jury were drawn, and which found the bill against the defendant, was improperly selected and summoned, the list not having been taken from a revised jury list, as required under sections 1722, 1723, 1724, 1725, 1726, 1727, 1729 and 1730 of The Code, and the amendments thereto; and that said jury list had not been revised or purged since June, 1898, and then revised with partiality so as to discriminate unjustly and purposely against competent persons of the negro race, to which the defendant belongs, on account of such person's race or color.

2. Because the officers whose duty it was to revise the jury list and to draw the panels to be summoned by the Sheriff, from which the grand and petit juries were drawn, had revised, selected and summoned the thirty-six jurors for the term of the Court for said county, from which the grand jurors were drawn that found the true bill against the defendant, with the unlawful and avowed purpose of discriminating against persons of the negro race, who, of right, being competent, should not have been excluded from the jury lists on account of their race or color, to the prejudice of the defendant.

3. Because such unjust and unlawful discrimination against the defendant deprived him of a fair and impartial trial in that Court, as is guaranteed to him under the Constitution and laws of North Carolina, and the Thirteenth and Fourteenth Amendments to the Constitution of the United States, and the acts of Congress thereunder.

4. Because, in the defendant's belief, he could not get an impartial trial, as guaranteed him by the laws of the land, under such unjust discrimination against him, on account of his race and color, there being about fifty-five thousand popu-

lation in Mecklenburg County, one-third of whom are of persons of the negro race who pay taxes on more than a quarter of a million dollars worth of property, and the greater number of whom are equal to the average jurors as serve in the several Courts.

The defendant prayed that a subpœna *duces tecum* be issued from the Court to the Chairman of the Board of Commissioners of Mecklenburg County, to the Register of Deeds, to the Clerk of said Board, and to the Sheriff of said county, requiring them to bring their several records pertaining to the drawing and summoning of jurors for that term of Court, and also the jury box and boxes, and to give such information to the Court respecting the selecting and summoning of jurors that might be asked of them, and of which they might have knowledge.

The prayer embraced also a number of other witnesses. 2. That the motion to quash the bill of indictment be granted, that the list of jurors selected and summoned for this term of the Court be set aside, because the officers who selected and summoned the jurors had corruptly and avowedly discriminated against the rights of the defendant, so as to prevent a fair and impartial trial under the law of the land, by excluding from the jury list competent persons of the colored race. The motion was followed by an affidavit of the defendant, as follows: "That he is informed and believes, and doth so aver, that the cause set forth in affiant's motion to quash the bill is true and well founded in fact and in law, to the best of affiant's own knowledge and belief. Affiant further states that he is informed and believes, and doth ever aver, that it is the well conceived and avowed purpose of the County Commissioners and Sheriff of said county and State to so manage the soliciting and summoning of the several jurors to sit as jurors in this Court, either as grand or petit jurors or both, so as to wrongfully and unjustly discriminate against defendant's

right to a fair and impartial jury of good and lawful men, by shutting out or by keeping off the jury panels competent and lawful persons of defendant's race; and that affiant verily believes, and doth aver, that said officers have so acted in selecting and summoning· the panels of jurors to attend at this term of Court, said grand jury being a continued panel or Spring Term panel, selected by the County Commissioners January 6, 1902; and that affiant believes that he can not get a fair and impartial trial in this Court, or in any other such Court, to which he is entitled under the laws and Constitution of North Carolina, and the Thirteenth and Fourteenth Amendments and Acts of the Congress of the United States thereto, under such unfair and avowed discrimination against the affiant's just right to a fair and impartial trial in this Court, on account of affiant's race and color; and affiant further sets forth and firmly avers that he believes that the grounds of his motion to quash the indictment are reasonable and just, and are warranted by the Constitution and laws of North Carolina, the Thirteenth and Fourteenth Amendments to the Constitution, and the acts of Congress thereunder, and the just and reasonable consideration of mankind, and that he ever believes and avers." Sworn to and subscribed before the Clerk of the Superior Court, on the 22d day of April, 1902.

The Court overruled the motion, and refused the prayer for subpœna, *duces tecum* on the grounds "That the Court had not the power to quash the bill of indictment on the grounds set out in the defendant's motion and affidavit, and could not investigate the matters alleged in the motion and affidavit under a motion to quash." The defendant excepted, entered his plea. of not guilty, and proceeded to trial. He then challenged a panel of the petit jury on the grounds heretofore set out. The Court overruled the challenge, and the defendant excepted.

The question for decision is not whether a grand jury, in the finding of a true bill against a negro, or a petit jury by whom the indictment is tried, shall be composed in whole or in part of the defendant's own color, but it is whether, "in the composition or selection of jurors by whom he is indicted or tried, all persons of his own race or color may be excluded by law solely because of their race or color, so that by no possibility can a colored man sit upon the jury. The only qualifications which the laws of North Carolina impose for jury service are the payment of taxes for the preceding year and good moral character and sufficient intelligence. The Code, Sec. 1722. The defendant does not, and, indeed, could not justly, complain of the laws of the State in reference to the manner in which provision has been made for the constitution and selection of juries. His complaint is that, notwithstanding it is required by our laws that such of its citizens as possess the proper qualifications shall be placed on the jury lists, the colored race, of which he is a member, although many of them possess the requisite qualifications, are excluded by the officers who are charged by the law with the duty of selecting jurors, solely because they are of that race. If the facts be such as the defendant declares them to be, what, if any, wrong has he suffered, and, if any, what remedy has he, if any? If he has suffered any wrong, the fact that it may have been caused through the administrative officers of the State, instead of by legislative enactment, does not relieve the situation. It would still be a wrong. *Carter v. Texas*, 177 U. S., 442.

It was argued here for the State that the individuals who composed the grand and petit juries were possessed of the requisite qualifications for jurors, as prescribed by law; that no harm was shown to have been done to the defendant because of a failure to have negroes on the jury, and, therefore, that he had no grievance. But is not that an erroneous and

superficial view of the matter? In the opinion in the case of *Strauder v. West Va.*, 100 U. S., 303, Mr. Justice Strong, for the Court, said: "The very fact that colored people are singled out and expressly denied by a statute all right to participate in the administration of the law as jurors, because of their color, though they are citizens and may be in other respects fully qualified, is practically a brand upon them, affixed by the law, an assertion of their inferiority, and a stimulant to that race prejudice which is an impediment to securing to individuals of that race that equal justice which the law aims to secure to all others."

The right of trial by jury is guaranteed to every citizen of the State. It is ordained by section 13 of Article I of the Constitution of North Carolina that, "No person shall be convicted of any crime but by the unanimous verdict of a jury of good and lawful men in open Court. The Legislature may, however, provide other means of trial for petit misdemeanors, with the right of appeal." And it goes for the saying that the makeup, constitution and selection of juries is an extremely important part of the protection and benefits intended to be secured by jury trial. The most primitive as well as the most advanced idea of a jury is that it is a body of men selected and drawn to determine the rights of parties under indictment and in other judicial proceedings, and composed of the neighbors, associates and persons having the same legal status in the community as the litigants or the accused. We know of common knowledge that prejudices sometimes exist in communities against certain classes which control the judgment of juries in their deliberations, and therefore operate to deny such classes such privileges as others enjoy; and race antipathy is as old as historic time, however much some philanthropists and independent thinkers have done or may be doing to eradicate it. It is difficult to understand how the conduct of the officers, whose duty it

is to select jurors in Mecklenburg County, if it is such as it is declared to be in the motion and affidavit of the defendant, can be considered as fair and undiscriminating against colored persons in that county who may be tried for a criminal offense against the State, or who may be parties in civil actions. It is incomprehensible that while all white persons entitled to jury trials have only white jurors selected by the authorities to pass upon their conduct and their rights, and the negro has no such privilege; the negro can be said to have equal protection with the white man. How can the forcing of a negro to submit to a criminal trial by a jury drawn from a list, from which has been excluded the whole of his race purely and simply because of color, although possessed of the requisite qualifications prescribed by the law, be defended? Is not such a proceeding a denial to him of equal legal protection. There can be but one answer, and that is that it is an unlawful discrimination. A wrong, then, has been done against the defendant if the facts set forth in the motion and affidavit be true, and in this age of the world there must be a remedy for every wrong.

What was the defendant's remedy? The very one he sought to have applied. By section 1741 of The Code, it is provided that "all exceptions to grand jurors for and on account of their disqualifications shall be taken before the jury is sworn and empanneled to try the issue by motion to quash the indictment, and if not so taken the same shall be deemed to be waived." It was urged in this Court for the State that a plea in abatement was the only course of procedure which the defendant could follow in this case. But in *State v. Haywood,* 94 N. C., 847, this Court said that "The regular and appropriate method of making objection to a grand juror, under the general practice, when the fact upon which it depended did not appear in the record, and had to be established by proof, is by plea and abatement, and if it does so

appear, by a motion to quash." But the Court went on to say that "In our practice, the distinction has not been recognized as important, and the motion to quash has been held proper in either case." The Court went on further to say, "But whatever difference may be supposed to exist as to the two methods of raising the objection, they are removed and the practice settled by statute" (quoting The Code, Sec. 1741). The discrimination which is alleged to have been practised against the defendant is one that has been passed upon by the Supreme Court of the United States, and held to be contrary to the Fourteenth Amendment of the Constitution of the United States, and therefore unlawful. *Strauder v. West Va.,* and *Virginia v. Rives,* 100 U. S., 303 and 313; *Neal v. Delaware,* 103 U. S., 370; *Carter v. Texas,* 177 U. S., 442. In the last mentioned case, the facts and manner of procedure in the State Court of Texas were just as they are here.

There was error in the judgment of the Court, and error in the refusal of his Honor to grant the motion and have the matter set out in the motion and affidavit properly considered and tried. The case is remanded to that end.

Error.

CLARK, J., concurring. I concur in the conclusion that the presiding Judge should have heard the evidence, found the facts, and rendered judgment thereon, and that only because the United States Supreme Court, the final tribunal upon all Federal questions, has so decided. *Carter v. Tex.,* 177 U. S., 442; *Gibson v. Miss.,* 162 U. S., 565; *Neal v. Delaware,* 103 U. S., 370; *Strauder v. W. Va.,* 100 U. S., 303, and *Va. v. Rives, Ibid.,* 313. We must bow to that authority, though I am constrained to believe that the argument of Mr. Justice Field, in his dissenting opinion in *Neal v. Delaware,* 103 U. S., at pages 405-409, clearly demonstrates that

the Thirteenth, Fourteenth and Fifteenth Amendments conferred "no warrant for any legislation of Congress interfering with the selection of jurors in the State Courts." Chief Justice Waite also dissented in that case, and Mr. Justice Field reiterated in that dissent what he had so well said in his previous dissent, a very able one, in *Ex parte Virginia,* 100 U. S., 349-370, in which dissenting opinion Mr. Justice Clifford concurred. Among other things, in that dissent, Mr. Justice Field particularly says (100 U. S., at page 368): "If, when a colored person is accused of, a criminal offence, the presence of persons of his race on the jury by which he is to be tried is essential to secure to him the equal protection of the laws, it would seem that the presence of such persons on the bench would be equally essential, if the Court should consist of more than one Judge, as in many cases it may; and if it should consist of a single Judge, that such protection would be impossible. A similar objection might be raised to the composition of *any appellate Court* to which the case, after verdict, might be carried."

After this delicate suggestion, that to be consistent the United States Supreme Court should insist upon the admission of colored members, Mr. Justice Field proceeds: "The position that in cases where the rights of colored persons are concerned, justice will not be done to them unless they have a mixed jury, is founded upon the motion that in such cases white persons will not be fair and honest jurors. If this position be correct, there ought not to be any white persons on the jury where the interests of colored persons only are involved. That jury would not be an honest and fair one, of which any of its members should be governed in his judgment by other considerations than the law and the evidence; and that decision would hardly be considered just which should be reached by a sort of compromise, in which the prejudices of one race were set off against the prejudices of the

other. To be consistent, those who hold this notion should contend that in cases affecting members of the colored race only, the juries should be composed entirely of colored persons, and that the presiding Judge should be of the same race."

I can add nothing to the force of Mr. Justice Field's argument, but I can express my concurrence in his view that the last three amendments to the United States Constitution were not *intended* to authorize Federal interference with the composition of juries in State Courts. The Fourteenth Amendment is the only one relied on, and that can not apply because "A jury *demodistate linguae*" has never in this country been embraced in "due process of law," nor requisite to the "equal protection of the laws." If recognition of each race is required in the composition of juries, it is equally essential in the composition of the judiciary. Both are constituent elements in the administration of justice.

In this State, the laws exclude no one from the jury or grand jury because of race, neither does it exclude any one from the bench on that ground. If the words "due process of law" and "equal protection of the laws" warrant Federal interference and inquiry as to the manner of selecting jurors when negroes do not appear on the panel, the same rule will warrant investigation of the mode of selecting Judges because no negroes are on this or the lower bench. Under the Constitution of the Union, as our fathers made it, the State prescribed the method of selecting its own juries and judges, and supervised the execution of its own laws in reference thereto. Like Justice Field, I see no warrant for Federal intereference under powers conferred by the Fourteenth Amendment.

The above cited decisions of the United States Supreme Court all hold that only when the alleged discrimination against colored jurors is by virtue of the provisions of the Constitution or statutes of the State does the right to remove

exist, and that when the alleged exclusion of colored jurors is by virtue of the method of administering laws which contain no such discrimination, the sole remedy is by appeal to the highest Court of the State, and thence by writ of error to the Federal Supreme Court. In *Gibson v. Mississippi,* 162 U. S., 565, Harlan, J., reviews the uniform decisions to that effect, and sustains (at page 589') as valid the legal requirements in Mississippi "that no person should be a grand or petty juror unless he was a *qualified elector* and able to read and write, * * * and should possess good intelligence, sound judgment and fair character."

DOUGLAS, J., concurring in result.  In concurring in the conclusion of the Court, which I do without hesitation, I deem it sufficient to say that the defendant has been denied a constitutional right.  Whether he has been injured or not by such deprivation is not for me to say.  The mere fact that a substantial right intended for his protection has been denied him, is sufficient to influence my judgment.  Whether the juries were in fact improperly drawn, remains to be proved, but for the purposes of this discussion, we must assume the truth of the defendant's allegation, because he has been denied the opportunity of proving it.  As this is a right claimed by the defendant under the Federal as well as the State Constitution, and which has been so recently decided and fully discussed by the Supreme Court of the United States, any further discussion on my part is entirely unnecessary. *Carter v. Texas,* 177 U. S., 442.  This would end the matter but for some expressions in the opinion of the Court.  I may frankly say that while verdicts are sometimes rendered that do not meet my approval, I can not concur in any statment that any classes are, as a rule, unable to obtain justice on account of the prejudice of the average juror. This may happen in individual cases, especially in criminal

trials where there is great public excitement; and wherever it appears, a new trial should promptly be granted. My views as to the character, powers and responsibilities of the jury are expressed in *Cable v. Railway,* 122 N. C., 892, 900.

I fully concur in the conclusion of the Court that the defendant is entitled, irrespective of his color, to the fullest protection of the law; and that he may rightfully demand all the rights guaranteed to him by the Constitution of this State and of the United States, as well as every legal remedy necessary for their protection and enforcement. A denial of the remedy would be a denial of the right.