STATE OF NORTH CAROLINA v. ERNEST RICHARD COFIELD

No. 789A85

(Filed 7 July 1987)

1. Constitutional Law § 60; Grand Jury § 3.3— selection of grand jury foreman—
   racial discrimination—violation of N. C. Constitution

   Racial discrimination in the selection of grand jury foremen violates Art. I, §§ 19 and 26 of the North Carolina Constitution irrespective of whether there was discrimination in selection of the grand jury itself.

2. Constitutional Law § 60; Grand Jury § 3.3— selection of grand jury foreman—
   racial discrimination—indictment vitiated and judgment arrested

   If racial discrimination in the selection of the foreman of the grand jury which indicted the defendant can be demonstrated, defendant's indictment will

be vitiated and the judgment against him arrested irrespective of whether the foreman's duties were merely ministerial and whether the alleged discrimination affected the outcome of the grand jury proceedings.

**3. Constitutional Law § 60; Grand Jury § 3.3— selection of grand jury foreman— racial discrimination—violation of equal protection**

Discrimination in the selection of a grand jury foreman violates the equal protection provisions of the fourteenth amendment to the United States Constitution when the defendant bringing the equal protection claim is a member of the allegedly excluded class without regard to whether the foreman's duties are merely ministerial and whether the alleged discrimination affected the outcome of the grand jury proceedings.

**4. Constitutional Law § 60; Grand Jury § 3.3— selection of grand jury foreman— racial discrimination—prima facie showing**

A black defendant may make out a prima facie case of racial discrimination in the selection of the grand jury foreman by showing either (1) that the selection procedure itself was not racially neutral, or (2) that for a substantial period in the past relatively few blacks have served in the position of foreman even though a substantial number have been selected to serve as members of grand juries.

**5. Constitutional Law § 60; Grand Jury § 3.3— selection of grand jury foreman— racial discrimination—prima facie showing**

A black defendant made a prima facie showing of racial discrimination in the selection of the grand jury that indicted him where he presented evidence that sixty-one percent of the population of the county is black, that the racial composition of grand juries during the preceding eighteen years reflected the racial composition of the county as a whole, and that during such time thirty-three persons had been appointed as grand jury foremen but only one appointee was black. However, the State may rebut defendant's prima facie case by offering evidence that the process used in selecting the grand jury foreman in these proceedings was in fact racially neutral.

Justice MEYER concurring in result.

Justice MITCHELL concurring in result.

Justice WHICHARD joins in this concurring opinion.

Justice WEBB dissenting,

DEFENDANT appeals from the decision of a divided panel of the North Carolina Court of Appeals, 77 N.C. App. 699, 336 S.E. 2d 439 (1985) (*Hedrick, C.J.,* and *Parker, J.,* with *Becton, J.,* concurring in part and dissenting in part). The Court of Appeals found no error in defendant's trial before *Allsbrook, J.,* and a jury at the 30 July 1984 Criminal Session of NORTHAMPTON County Superior Court, but remanded for resentencing on defendant's

convictions of second degree rape and felonious breaking and entering. Heard in the Supreme Court on 11 March 1987.

*Lacy H. Thornburg, Attorney General, by Joan H. Byers, Special Deputy Attorney General, and John H. Watters, Assistant Attorney General, for the state.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Daniel R. Pollitt, Assistant Appellate Defender, for defendant.*

EXUM, Chief Justice.

The questions presented are: (1) whether racial discrimination in selection of the grand jury foreman involved in this case would vitiate defendant's indictment and conviction, and (2) whether defendant has made out a prima facie case of such discrimination in the proceedings against him. We answer both questions affirmatively, reverse the Court of Appeals, and remand the case for a hearing so the state may have an opportunity to rebut defendant's prima facie case.

I.

The state's evidence at trial tended to show that on 25 June 1984 defendant forced his way into the victim's home and dragged her into a bedroom, where he raped her and then choked her until she lost consciousness. Defendant's evidence tended to establish an alibi.

Defendant moved before trial to dismiss his indictment, claiming that racial discrimination in the selection of grand jury foremen in Northampton County violated his rights under the state and federal constitutions. Defendant's evidence at a hearing on his motion included 1980 census figures showing that approximately sixty-one percent of the population of Northampton County is black. He also introduced a report prepared by Mr. R. J. White, Northampton County's Clerk of Superior Court, listing all who had served as grand jury foreman since 1960 by name, race, and sex.[1] This report showed that only one black person had served as grand jury foreman in the period from 1960 until the trial. The black foreman served two six-month terms beginning in July 1979. The Clerk of Court, who had occupied that position

---

1. The Clerk's report was designated Defendant's Exhibit No. 1.

since 1966, testified that in his opinion the racial composition of grand juries since 1968 generally reflected that of the county.

Mr. White further testified that he and other court officials advised the presiding judge on selection of grand jury foremen. He could not recall whether a judge ever had consulted any black person during this process, but he denied knowledge of any presiding judge's refusal to consider a person because of his race.

Judge Allsbrook, without making specific findings, denied defendant's motion to dismiss the indictment. Defendant was then tried, convicted, and sentenced to consecutive terms of thirty years for second degree rape and three years for felonious breaking and entering.

In his appeal to the Court of Appeals, defendant contended that the trial court erred in failing to dismiss the indictment against him because the racially discriminatory process of selecting grand jury foremen in Northampton County violated his right to equal protection of the law under the North Carolina and United States Constitutions. A majority of the Court of Appeals' panel rejected defendant's argument, holding that "the evidence of discrimination in the record is [insufficient] to require us to reverse a conviction." *State v. Cofield*, 77 N.C. App. at 701, 336 S.E. 2d at 440. The Court of Appeals' majority opinion acknowledged the uncontradicted evidence showing that sixty-one percent of Northampton County is black, as well as evidence indicating that during the preceding eighteen years only one black person had served as grand jury foreman. *Id.* at 702, 336 S.E. 2d at 440. The court held, however, that because the record in the instant case did not reflect the total number of persons who served as grand jury foremen over the relevant time period, it was impossible to calculate whether defendant had established a statistical case of discrimination.[2] *Id.*, 336 S.E. 2d at 441.

Judge Becton, believing defendant had made out a prima facie case of discrimination, dissented.

2. Defendant's Exhibit No. 1 was not made part of the record on appeal to the North Carolina Court of Appeals, but on motion of defendant was added by this Court as an addendum to the record on 18 February 1986. This exhibit contains the information found lacking by the Court of Appeals.

## II.

In North Carolina, one member of each impaneled grand jury is chosen by the presiding superior court judge to serve as foreman. N.C.G.S. § 15A-622(e) (1983). Defendant argues that he was denied equal protection of the law as guaranteed by the state and federal constitutions because of racial discrimination in selection of the foreman of the grand jury that indicted him. He does not complain of racial discrimination in selection of the grand jury as a whole. Thus, the initial question we face is whether racial discrimination in the selection of a grand jury foreman from a panel of grand jurors selected in a nondiscriminatory manner infringes upon any constitutional right. For the following reasons we conclude that such discrimination violates Article I, sections 19 and 26 of the North Carolina Constitution. These provisions, individually and together, constitute adequate and independent state grounds for our decision in this case. *See Michigan v. Long*, 463 U.S. 1032, 77 L.Ed. 2d 1201 (1983). Defendant's claims under the federal constitution will, however, be discussed in Part III of this opinion.

## A.

[1] This Court has long recognized the wrong inherent in jury proceedings tainted by racial discrimination. Eighty-five years ago, in a case decided under the fourteenth amendment to the United States Constitution, we said:

It is incomprehensible that while all white persons entitled to jury trials have only white jurors selected by the authorities to pass upon their conduct and their rights, and the negro has no such privilege, the negro can be said to have equal protection with the white man. How can the forcing of a negro to submit to a criminal trial by a jury drawn from a list from which has been excluded the whole of his race purely and simply because of color, although possessed of the requisite qualifications prescribed by the law, be defended? Is not such a proceeding a denial to him of equal legal protection[?] There can be but one answer, and that is that it is an unlawful discrimination.

*State v. Peoples*, 131 N.C. 784, 790, 42 S.E. 814, 816 (1902).

Since these words were penned, we have made it clear that purposeful exclusion of citizens from grand jury service on the basis of race violates not only the federal constitution, but the equal protection guarantees of our state constitution as well. *See, e.g., State v. Covington,* 258 N.C. 495, 128 S.E. 2d 822 (1963); *State v. Perry,* 248 N.C. 334, 103 S.E. 2d 404 (1958); *see also* North Carolina Advisory Committee, Equal Protection. of the Laws in North Carolina 59 (1962). *Covington* and *Perry,* of course, were decided at a time when the state constitution's guarantee of equal protection was merely implicit in the document. *See S. S. Kresge Co. v. Davis,* 277 N.C. 654, 178 S.E. 2d 382 (1971). In 1970, North Carolina's commitment to equal protection was made explicit. Article I, section 19 of the state constitution now provides that "[n]o person shall be denied the equal protection of the laws; nor shall any person be subjected to discrimination by the State because of race, color, religion, or national origin."

Article I, section 26 of the North Carolina Constitution is even more pertinent to the question presented in this case. Adopted in 1970 in conjunction with the equal protection language quoted above, this provision states that "[n]o person shall be excluded from jury service on account of sex, race, color, religion, or national origin."

Article I, section 26 does more than protect individuals from unequal treatment.[3] The people of North Carolina have declared in this provision that they will not tolerate the corruption of their juries by racism, sexism and similar forms of irrational prejudice. They have recognized that the judicial system of a democratic society must operate evenhandedly if it is to command the respect and support of those subject to its jurisdiction. It must also be *perceived* to operate evenhandedly. Racial discrimination in the selection of grand and petit jurors deprives both an aggrieved defendant and other members of his race of the perception that he has received equal treatment at the bar of justice. Such discrimination thereby undermines the judicial process. *Cf. State v. Mettrick,* 305 N.C. 383, 385, 289 S.E. 2d 354, 356 (1982) ("the ap-

---

3. We note that Article I, section 26 was adopted at the same time as the equal protection language found in Article I, section 19, yet was not considered redundant.

pearance of a fair trial before an impartial jury is as important as the fact of such a trial").

Exclusion of a racial group from jury service, moreover, entangles the courts in a web of prejudice and stigmatization. To single out blacks and deny them the opportunity to participate as jurors in the administration of justice—even though they are fully qualified—is to put the courts' imprimatur on attitudes that historically have prevented blacks from enjoying equal protection of the law.

Discrimination in the selection of grand jury foremen is no less wrong, and no less contrary to the letter and spirit of our constitution, than discrimination in the selection of jurors generally. This is so even if there was no discrimination in the impaneling of the grand jury from which the foreman was selected. The foreman, by his very title, is distinguished from other members of the grand jury. As the titular head of the grand jury, the foreman is first among equals, both in the eyes of his fellow jurors and in the eyes of the public. Because the foreman is thus set apart, it is as important to ensure racial neutrality in the selection of this officer as it is to avoid racial discrimination in the selection of grand and petit jurors generally. We conclude, therefore, that racial discrimination in the selection of grand jury foremen violates Article I, sections 19 and 26 of the North Carolina Constitution, irrespective of whether there was discrimination in selection of the grand jury itself.

B.

[2] We turn now to the appropriate remedy for violations of these constitutional guarantees. The state argues that defendant's indictment need not be vitiated, nor the judgment against him arrested, because the duties of the foreman are essentially clerical and ministerial in nature and without substantive effect on the outcome. It argues further that the grand jury foreman's position is not so significant that discrimination in the process by which he is selected undermines the integrity of the indictment.[4]

---

4. These arguments, which appear to have been inspired by the United States Supreme Court's decision in *Hobby v. United States*, 486 U.S. 339, 82 L.Ed. 2d 260 (1984), will also be discussed in Part III of this opinion.

We do not address the question of whether the foreman's duties are merely ministerial and without substantive effect on the proceedings. No such determination is necessary to our decision under the state constitution. The effect of racial discrimination on the outcome of the proceedings is immaterial. Our state constitutional guarantees against racial discrimination in jury service are intended to protect values other than the reliability of the outcome of the proceedings. Central to these protections, as we have already noted, is the perception of evenhandedness in the administration of justice. Article I, section 26 in particular is intended to protect the integrity of the judicial system, not just the reliability of the conviction obtained in a particular case. The question, therefore, is not whether discrimination in the foreman selection process affected the outcome of the grand jury proceedings; rather, the question is whether there was racial discrimination in the selection of this officer at all. This Court has repeatedly stated that racially motivated exclusion of blacks from a grand jury will, by itself, vitiate any indictment returned by that grand jury against a black defendant. *See, e.g., State v. Cornell,* 281 N.C. 20, 187 S.E. 2d 768 (1972); *State v. Ray,* 274 N.C. 556, 164 S.E. 2d 457 (1968); *State v. Wright,* 274 N.C. 380, 163 S.E. 2d 897 (1968); *State v. Yoes,* 271 N.C. 616, 157 S.E. 2d 386 (1967); *State v. Lowry,* 263 N.C. 536, 139 S.E. 2d 870, *cert. denied and appeal dismissed,* 382 U.S. 22, 15 L.Ed. 2d 16 (1965); *State v. Wilson,* 262 N.C. 419, 137 S.E. 2d 109 (1964); *State v. Covington,* 258 N.C. 495, 128 S.E. 2d 822; *State v. Perry,* 248 N.C. 334, 103 S.E. 2d 404. When the state has failed to rebut a defendant's prima facie showing of discrimination against members of his race in the grand jury selection process, we have quashed the indictment without reference to whether the discrimination had any effect on the outcome of the grand jury proceedings. *State v. Lowry,* 263 N.C. 536, 139 S.E. 2d 870; *State v. Wilson,* 262 N.C. 419, 137 S.E. 2d 109.

The rule should be no different when there is discrimination in selection of the grand jury foreman. The integrity of the judicial system is at stake in this situation, just as it is when the entire grand jury is selected in a discriminatory manner. Thus, if racial discrimination in the selection of the foreman can be demonstrated in this case, the proceedings against defendant were fatally flawed.

## III.

[3]   As stated above, our decision in this case can stand on the North Carolina Constitution alone, and we need not reach the federal question presented. We are persuaded, however, that defendant's equal protection challenge to the foreman selection process in Northampton County has merit under the fourteenth amendment to the United States Constitution.

The leading case in this area is Rose v. Mitchell, 443 U.S. 545, 61 L.Ed. 2d 739 (1979). In Rose, two black defendants brought an equal protection challenge to the selection of a state grand jury foreman in Tennessee. This challenge ultimately was rejected because defendants failed to make out a prima facie case of discrimination, but the Court's opinion in Rose clearly indicated that such discrimination is a matter cognizable under the equal protection clause of the fourteenth amendment.

The Court began its analysis by noting that " 'a criminal conviction of a Negro cannot stand under the Equal Protection Clause of the Fourteenth Amendment if it is based on an indictment of a grand jury from which Negroes were excluded by reason of their race.' " Id. at 551, 61 L.Ed. 2d at 746 (citing Alexander v. Louisiana, 405 U.S. 625, 31 L.Ed. 2d 536 (1972); Bush v. Kentucky, 107 U.S. 110, 27 L.Ed. 354 (1883); and Neal v. Delaware, 103 U.S. 370, 26 L.Ed. 567 (1881) ). Concerns similar to those we expressed in Part II of this opinion were voiced in Rose:

Discrimination on the basis of race, odious in all respects, is especially pernicious in the administration of justice. Selection of members of a grand jury because they are of one race and not another destroys the appearance of justice and thereby casts doubt on the integrity of the judicial process. The exclusion from grand jury service of Negroes, or any group otherwise qualified to serve, impairs the confidence of the public in the administration of justice. As this Court repeatedly has emphasized, such discrimination "not only violates our Constitution and the laws enacted under it but is at war with our basic concepts of a democratic society and representative government." Smith v. Texas, 311 U.S. 128, 130, 85 L.Ed. 84, 61 S.Ct. 164 (1940) (footnote omitted). The harm is not only to the accused, indicted as he is by a jury from which a segment of the community has been ex-

cluded. It is to society as a whole. "The injury is not limited to the defendant—there is injury to the jury system, to the law as an institution, to the community at large, and to the democratic ideal reflected in the processes of our courts." *Ballard v. United States*, 329 U.S. 187, 195, 91 L.Ed. 181, 67 S.Ct. 261 (1946).

*Id.* at 555-56, 61 L.Ed. 2d at 749. Justice Blackmun, writing for the majority,[5] said in dicta that the Court "assume[d] without deciding that discrimination with regard to the selection of only the foreman requires that a subsequent conviction be set aside, just as if the discrimination proved had tainted the selection of the entire grand jury venire." *Id.* at 551-52 n.4, 61 L.Ed. 2d at 747 n.4.

Following *Rose*, courts in at least two federal circuits have held that discrimination in the selection of a grand jury foreman violates the equal protection provisions of the federal Constitution. *See, e.g., United States v. Cross*, 708 F. 2d 631 (11th Cir. 1983); *Guice v. Fortenberry*, 661 F. 2d 496 (5th Cir. 1981). We agree, but limit our holding to cases such as this one, where the defendant bringing the equal protection claim is a member of the allegedly excluded class. As the Eleventh Circuit Court of Appeals has said, "the thrust and spirit of the language in *Rose*, which detailed the costs to defendants and to society of discrimination in the administration of justice, suggests to us that the Supreme Court still believes in the importance of providing a viable remedy" for discrimination in the selection of grand jury foremen. *United States v. Cross*, 708 F. 2d at 635.

We are aware that the New Jersey Supreme Court recently reached a different conclusion in *State v. Ramseur*, No. A-2-84 (N.J. 5 March 1987). Defendant Ramseur brought a federal equal protection challenge to his indictment, claiming that the foreman of the New Jersey grand jury that indicted him had been selected in a racially discriminatory manner. The court, relying on *Hobby v. United States*, 468 U.S. 339, 82 L.Ed. 2d 260 (1984), rejected this claim on the grounds that "the duties of the grand jury foreman in this state . . . are not constitutionally significant." *State v. Ramseur*, No. A-2-84, slip. op. at 134 (N.J. 5 March 1987). Our

---

5. This portion of Justice Blackmun's opinion was joined by Justices Brennan, Marshall, White and Stevens.

Court of Appeals, in *State v. Gary*, 78 N.C. App. 29, 337 S.E. 2d 70 (1985), *disc. rev. denied*, 316 N.C. 197, 341 S.E. 2d 586 (1986), made a similar analysis and—relying on *Hobby*—concluded that racial discrimination in the selection of a North Carolina grand jury foreman did not entitle a black defendant to relief under the Equal Protection Clause of the Fourteenth Amendment.[6]

We believe, for the following reasons, that the *Hobby* decision was misinterpreted and misapplied by the New Jersey Supreme Court in *Ramseur* and by our Court of Appeals in *Gary*. For the same reasons we find that *Hobby* is inapposite here. To the extent that *Gary* is inconsistent with our holding today, it may no longer be considered authoritative.

Defendant in the case we decide today, like defendants Ramseur and Gary, is black. He alleges that members of his race have been unlawfully excluded from service as grand jury foremen in Northampton County. He claims, in essence, a violation of his right to *equal protection* in the selection of grand jury foremen. The defendant in *Hobby*—a white male—argued that systematic exclusion of blacks and women from the position of grand jury foreman in the federal system had deprived him of fundamentally fair proceedings in violation of his right to *due process. Hobby v. United States*, 468 U.S. at 347, 82 L.Ed. 2d at 268. Rejecting this claim, the Supreme Court noted that the duties of a federal grand jury foreman are essentially clerical in nature; therefore, discrimination in the selection of this officer from a properly constituted grand jury did not affect the fairness of proceedings against "a white male bringing a claim under the Due Process Clause." *Id.* at 350, 82 L.Ed. 2d at 269.

The Court carefully pointed out, however, that this type of analysis might not be appropriate in the context of an equal protection challenge. *Id.* at 346-47, 82 L.Ed. 2d at 267-68; *see also* W. LaFave & J. Israel, Criminal Procedure § 15.3 at 41-42 (Supp. 1986). Defendant Hobby was a white male. He was not a member "of the class allegedly excluded from service as grand jury foreman," and he had not "suffered the injuries of stigmatization and prejudice associated with racial discrimination." *Hobby v. United States*, 468 U.S. at 347, 82 L.Ed. 2d at 267. Thus, the Court ex-

---

6. The defendant in *Gary* did not raise the state constitutional issue.

plicitly distinguished Hobby's situation from that of a black defendant who brings an equal protection challenge to state grand jury proceedings. In light of this crucial distinction, we hold that where defendant is a member of the class allegedly discriminated against, his federal equal protection challenge to the foreman selection process should be evaluated without reference to whether the foreman's duties are merely ministerial, and without inquiry into whether the alleged discrimination affected the outcome of the grand jury proceedings. *See Guice v. Fortenberry*, 661 F. 2d 496 (5th Cir. 1981).

We therefore find that defendant's rights under the Equal Protection Clause of the Fourteenth Amendment are coextensive with his separate and independent equal protection rights under Article I, sections 19 and 26 of the North Carolina Constitution. If defendant can make a sufficient showing of racial discrimination in the foreman selection process, the proceedings against him were fatally flawed.

IV.

[4]  Finally, we consider whether defendant succeeded in making a prima facie showing of racial discrimination in selection of the foreman who presided over the grand jury that indicted him. We see no justification for employing a standard here that is different from the one we used to determine the issue with respect to selection of grand jury members generally. The test for jurors was set out in *State v. Foddrell*, 291 N.C. 546, 554, 231 S.E. 2d 618, 624 (1977):

> To establish a prima facie case of systematic racial exclusion, "defendants are generally required to produce not only statistical evidence establishing that blacks were underrepresented on the jury but also evidence that the selection procedure itself was not racially neutral, or that for a substantial period in the past relatively few Negroes have served on the juries of the county notwithstanding a substantial Negro population therein, or both. . . ."

Applying this test to the selection of a grand jury foreman, we conclude that a black defendant may make out a prima facie case of racial discrimination in the foreman's selection by showing either (1) that the selection procedure itself was not racially

neutral, or (2) that for a substantial period in the past relatively few blacks have served in the position of foreman even though a substantial number have been selected to serve as members of grand juries.

[5] Here defendant produced evidence sufficient to satisfy the second of these tests. Defendant's evidence indicated that the racial composition of Northampton County is approximately sixty-one percent black and thirty-nine percent white. Superior Court Clerk White testified that the racial composition of Northampton County grand juries since 1968 generally had reflected the racial composition of the county as a whole. White also testified that a grand jury foreman is either appointed or reappointed every six months, and during his eighteen years as clerk only one black person had been appointed grand jury foreman. White's records showed that although fifty appointments have been made and thirty-three persons have been appointed foreman since 1960, only one appointee was black. We think this is enough evidence to make out a prima facie case of racial discrimination in the selection of the foreman of the grand jury that indicted defendant.

Although defendant's evidence is enough to make out a prima facie case of such discrimination, the state may rebut defendant's prima facie case on remand by offering evidence that the process used in selecting the grand jury foreman in these proceedings was in fact racially neutral.

We therefore remand this case to the superior court in order to afford the state an opportunity to rebut defendant's prima facie showing. The inquiry will relate only to selection of the foreman of the grand jury that indicted this defendant. *State v. Wright*, 274 N.C. 380, 163 S.E. 2d 897. If the state fails to rebut defendant's prima facie showing, the verdict and judgments against defendant must be set aside. Defendant, however, is not entitled to his discharge. The state has the power to reindict him and may decide to do so. *State v. Lowry*, 263 N.C. 536, 139 S.E. 2d 870; *State v. Wilson*, 262 N.C. 419, 137 S.E. 2d 109.

The decision of the Court of Appeals is reversed and the case is remanded to that court for further remand to the Superior Court of Northampton County for the conduct of additional proceedings not inconsistent with this opinion.

Reversed and remanded.

Justice MEYER concurring in result.

I concur in section III of the majority opinion insofar as it holds that the equal protection guarantees of the fourteenth amendment of the United States Constitution prohibit racial discrimination in the selection of a grand jury foreman and thus a remand of this case for findings is dictated. The United States Constitution dictates the minimum equal protection rights of individuals in the sense that an individual's equal protection rights may be greater under a state constitution, but his rights under the federal constitution may not be diminished thereby. Thus, I find it unnecessary and unwise to proceed to any analysis of rights under the state constitution.

Justice MITCHELL concurring in result.

Article I, section 26 of the Constitution of North Carolina commands that: "No person shall be excluded from jury service on account of sex, race, color, religion, or national origin." In my view, it is clear beyond any doubt that this section of our Constitution was intended as an absolute guarantee that all citizens of this State would participate fully in the honor and obligation of jury service in all its forms; as petit jurors, grand jurors, and as foremen of the grand jury. This section of our Constitution was not enacted by the people of this State in a theoretical or abstract sense, such as by representatives in a constitutional convention. It was enacted by a direct vote of the entire people of North Carolina—the body politic—who were to be governed by its terms.

I do not believe that the people of North Carolina enacted this section of our Constitution for the benefit of criminal defendants who could show that they had been harmed by violations of its terms. Nor do I believe that the people intended that, in order to raise questions concerning alleged violations of this section, a person must be a member of any cognizable racial or ethnic group. Instead, the intent of the people of North Carolina was to guarantee *absolutely unto themselves* that in *all* cases *their* system of justice would be free of both the reality and the appearance of racism, sexism and other forms of discrimination in these twilight years of the Twentieth Century.

I completely agree with the argument that the duties of the grand jury foreman in North Carolina are only clerical in nature and do not affect the grand jury's decision as to whether to return a true bill of indictment in any case. However, this fact is totally irrelevant to the issue before us. The people of North Carolina having guaranteed *unto themselves* a judicial system free of both the appearance and reality of racism, this Court may not frustrate their will by affirming any conviction obtained upon a bill of indictment rendered by a grand jury whose foreman was selected on the basis of race. The people of this State, *as is their inalienable right,* have adopted an absolute prohibition in this regard, and we must apply it as such.

The defendant in the present case has made a *prima facie* showing — although only a *prima facie* showing — of discrimination against blacks in the selection of the foreman of the grand jury which indicted him. If he is able to establish upon the remand of this case that such discrimination in fact occurred, the indictment against him must be quashed without regard to whether discrimination had any actual effect on the grand jury's decision to return a true bill. Accordingly, I concur in the result reached by the majority.

The Court should decide the issue before it on the basis of article I, section 26 of the Constitution of North Carolina and go no further. This Court's construction of the Constitution of North Carolina is final and is binding, even upon the Supreme Court of the United States. *Lea Co. v. N.C. Board of Transportation,* 308 N.C. 603, 304 S.E. 2d 164 (1983). *See Missouri v. Hunter,* 459 U.S. 359, 74 L.Ed. 2d 535 (1983). Having decided this case on an adequate and independent State ground, the Court is most unwise from any standpoint — practicality, judicial restraint or disciplined legal scholarship — to address questions concerning the Constitution of the United States. *See generally, Reed v. Madison County,* 213 N.C. 145, 195 S.E. 620 (1938) and cases cited therein. To do so amounts to rendering an entirely unnecessary advisory opinion on questions which need not and should not be reached or decided. *Id.* Accordingly, I express no opinion here on matters involving the Constitution of the United States — matters as to which this Court cannot speak with finality. Further, I express no opinion with regard to any provision of the Constitution of North Carolina, other than article I, section 26.

**State v. Cofield**

Justice WHICHARD joins in this concurring opinion.

Justice WEBB dissenting.

I dissent. The majority has held that if the defendant can prove that there was discrimination in the selection of the foreman of the grand jury which indicted him there must be a new trial, even though the method of selecting the foreman had no impact on the outcome of the grand jury proceedings. I disagree with this conclusion. I agree that the "constitutional guarantee against racial discrimination in jury service is intended to protect values other than the reliability of the outcome of the proceedings." I believe these values can easily be protected without awarding a new trial in this case.

There is nothing that makes me believe that the superior court judges of this state, who select grand jury foremen, desire in any way to deprive any group of its constitutional rights. If a minority has not been properly considered for service as grand jury foremen in the past this defect may be cured by calling it to the attention of the superior court judges. They will insure that the problem is solved. If they do not we can take whatever action is necessary to do so. There is no need for the drastic remedy mandated in this case.

I can understand that the "racially motivated exclusion of blacks from a grand jury will, by itself, vitiate any indictment returned by that grand jury against a black defendant." In such a case we can assume that the grand jury could be disposed to give a different brand of justice to blacks. That is not so in this case. We cannot assume that if a grand jury is selected in a racially neutral manner it will discriminate against blacks if its foreman is not so selected.

I vote to affirm the Court of Appeals.