STATE OF NORTH CAROLINA v. THON JAIRO AGUDELO, AND JESUS BEATON

No. 8720SC682

(Filed 19 April 1988)

**1. Criminal Law § 10.2— trafficking in cocaine—accessories before the fact—sufficiency of evidence**

　　Defendants could properly be convicted of trafficking in cocaine, though they were not present when the cocaine was actually sold or delivered, where the evidence showed that defendants participated as accessories before the fact. N.C.G.S. § 14-5.2.

**2. Conspiracy § 8— one agreement—judgments for multiple conspiracies improper**

　　The trial judge erred in entering judgments for multiple conspiracies against defendants where the evidence revealed only one agreement; however, because the judge imposed the minimum sentence for each conviction and provided that the sentences run concurrently, the case is not remanded for resentencing.

**3. Narcotics § 3.1— laboratory analysis of seized substance—validity and reliability of tests**

　　In a prosecution for trafficking and conspiring to traffic in cocaine, there was no merit to defendants' contention that the trial judge erred in admitting testimony regarding the results of laboratory analysis of the seized substance because the State failed to demonstrate the validity and reliability of the tests, since an SBI chemist testified that he performed two tests on the substance, named those tests, described his expertise in administering those tests but did not explain how the tests worked, and testified that the tests revealed that the substance was cocaine; defendants failed to inquire into the reliability of the tests during *voir dire* or cross-examination; and the person who sold the substance to undercover agents testified that it was extremely strong cocaine.

State v. Agudelo

**4. Criminal Law § 80.1— telephone records generated by machine—reliability not shown—admission as harmless error**

In a prosecution for trafficking and conspiring to traffic in cocaine, telephone records of a hotel were improperly admitted under the business records exception where the records were produced by a machine, but several hotel personnel had access to the records, and the hotel employer testifying with regard to the records had no idea when the machine was last serviced; however, the error was harmless where there was other evidence showing the same facts which the telephone records showed. N.C.G.S. § 8C-1, Rule 803(6).

**5. Criminal Law § 92.1— trafficking and conspiring to traffic in cocaine—joinder of cases against two defendants proper**

The trial judge did not abuse his discretion in joining for trial cases against the two defendants for trafficking and conspiring to traffic in cocaine where evidence of activities of each was admissible against the other, and evidence seized from one defendant's room was admissible against both.

**6. Criminal Law § 162— evidence improperly admitted—similar evidence previously admitted without objection**

One defendant was not prejudiced by the erroneous admission of testimony concerning the discovery of drug paraphernalia in a motel room occupied by two of the participants in a cocaine conspiracy, since one of the participants had previously testified without objection that he used cocaine in his hotel room.

**7. Constitutional Law § 60; Jury § 7.14— peremptory challenges based on race—failure of record to show**

Defendants failed to make a *prima facie* showing that the prosecutor's exercise of his peremptory challenges was based on race where the record did not show the racial composition of the jury, the number of blacks who were excluded, or the extent to which the excluded jurors were otherwise qualified to serve.

**8. Searches and Seizures § 24— statements from informer in custody—reliability—sufficiency of affidavit to support search warrant**

There was no merit to defendant's contention that the affidavit on which a search warrant was based was insufficient because nothing in the warrant attested to the reliability of the informant, since the warrant was obtained during a continuing investigation after the informant was taken into custody for her participation in the suspected crime, and such statements have inherent indicia of reliability.

APPEAL by defendants from *F. F. Mills, Judge.* Judgment entered 20 March 1987 in Superior Court, UNION County. Heard in the Court of Appeals 11 December 1987.

*Attorney General Lacy H. Thornburg by Special Deputy Attorney General Daniel F. McLawhorn for the State.*

*Purser, Cheshire, Parker, Hughes, and Dodd by Gordon Widenhouse for defendant-appellants.*

BECTON, Judge.

Defendants Thon Jairo Agudelo and Jesus Beaton were each convicted of two counts of trafficking in cocaine and two counts of conspiring to traffic in cocaine. They were each sentenced to two 35-year prison terms, with the sentences to run concurrently, and were fined $250,000. Defendants appeal. We vacate the second conspiracy conviction of each defendant but find no other errors.

I

Defendants were arrested as a result of an intricate undercover police drug investigation. The State presented evidence that Detective Roger Laney of the Union County Sheriff's Department and Agent Mark Hawkins of the State Bureau of Investigation (S.B.I.) purchased marijuana from Don Flock and Brenda Huggett in October 1986. After the marijuana transaction was consummated, Detective Laney asked Flock and Huggett to aid him in purchasing a large quantity of cocaine.

Huggett traveled to Miami, Florida to arrange the cocaine purchase through Jose Rodriguez and Elizabeth Chandros. Chandros and Rodriguez, in turn, contacted defendant Jesus Beaton. Defendant Beaton coordinated Rodriguez's and Chandros' efforts to acquire the cocaine. Defendant Beaton informed Rodriguez and Chandros that "the Columbian," Thon Jairo Agudelo, had the cocaine. Then defendant Beaton, accompanied by Rodriguez and Chandros, visited Luis Otero, who, in turn, contacted defendant Agudelo and arranged the transfer. Defendant Beaton, Rodriguez and Chandros then drove to defendant Agudelo's Miami apartment. Otero and defendant Agudelo also drove to the apartment. Defendants Beaton and Agudelo entered the apartment together but returned to their respective vehicles after approximately ten minutes.

The two groups then drove separately to Charlotte, North Carolina. When Chandros' party arrived in Charlotte, she telephoned Huggett to arrange accommodations. They obtained two

rooms at the Ramada Inn. Room 511 was shared by Rodriguez and Chandros, and Room 509 was occupied by defendant Beaton. There was circumstantial evidence that defendant Beaton then telephoned Otero and defendant Agudelo who were sharing Room 202 at Travel Lodge. Upon instructions from defendant Beaton, Rodriguez went to Room 202 at Travel Lodge to pick up the cocaine which was contained in a bag identified by the Kentucky Fried Chicken trademark. Defendant Agudelo gave the bag to Rodriguez. Rodriguez gave the bag to Huggett. Huggett gave the bag to Flock. Flock examined the contents, tested the strength of the substance therein and gave the bag to Detective Laney and Agent Hawkins. The officers arrested Flock.

Flock agreed to lead the officers to his source. Flock led the officers to Huggett by enticing her to meet him to accept the pay-off for the sale. When Huggett arrived, she too was arrested. Huggett led the officers to Ramada Inn Rooms 509 and 511 where the officers arrested defendant Beaton, Rodriguez and Chandros. Chandros cooperated with the officers and told them that they had acquired the cocaine from defendant Agudelo who could be found in Travel Lodge Room 202. After a warrant was obtained, defendant Agudelo and Otero were arrested.

Defendants raised eight issues on appeal.

II

[1] Defendants first contend that the trial judge erred in denying their motions to dismiss the trafficking charges because the evidence was insufficient to support the verdict. Defendants argue that the State proceeded against them regarding the charges of trafficking in cocaine by possession, sale, and delivery on the theory that each man aided Don Flock in the sale and delivery of cocaine to Agent Hawkins and Detective Laney. However, they argue that neither of them was present when Flock sold or delivered the cocaine to Hawkins and Laney, and therefore they are not guilty of "aiding."

Defendants misapprehend the law. Defendants may be convicted of the substantive offense of trafficking in cocaine if they were "accessories before the fact." See N.C. Gen. Stat. Sec. 14-5.2; *State v. Woods*, 307 N.C. 213, 297 S.E. 2d 574 (1982). The elements of "accessory before the fact" are as follows: (1) defendant advised

and agreed, or urged the parties or in some way *aided* them to commit the offense; (2) defendant was *not present* when the offense was committed; and (3) the principals committed the crime. *State v. Sauls*, 291 N.C. 253, 230 S.E. 2d 390 (1976), *cert. denied*, 431 U.S. 916, 53 L.Ed. 2d 226 (1977). Thus, under our law the State was not required to prove that defendants were present during sale, delivery, or possession of the cocaine. The evidence, when considered in the light most favorable to the State, showed that defendants participated as accessories before the fact by aiding Don Flock. This assignment of error is overruled.

### III

[2] Defendants next contend that the trial judge erred in entering judgments for multiple conspiracies against them because the evidence revealed only one agreement. We agree. In *State v. Rozier*, 69 N.C. App. 38, 316 S.E. 2d 893, *cert. denied*, 312 N.C. 88, 321 S.E. 2d 907 (1984), this court held that where each act is the product of but one agreement, only one conspiracy may be charged. We therefore vacate the second conspiracy conviction against each defendant. However, because the trial judge imposed the minimum sentence for each conviction and provided that the sentences run concurrently, we do not remand for resentencing.

### IV

[3] Defendants next contend that the trial judge erred in admitting testimony regarding the results of laboratory analysis of the seized substance because the State failed to demonstrate the validity and reliability of the tests.

Agent McSwain, a chemist at the State Bureau of Investigations' crime laboratory, testified that he personally conducted two tests to identify the substance seized. He testified that he obtained an infra-red spectrum of samples and conducted microcrystalline tests on a portion of the powdered substance. He described his expertise in administering these tests, but he did not explain how the tests worked, i.e., how results were obtained or whether the tests were reliable. He testified that the tests revealed that the substance was cocaine. In our view, the foundation met the minimum requirement for admission of results from scientific tests. Equally important, however, defendants failed to inquire into the reliability of the tests during *voir dire* or cross-examina-

tion as they were permitted to do under Rule 705 of the N.C. Rules of Evidence. The State's position is also buttressed by other evidence that the substance was cocaine. Don Flock testified, without objection by defendants, that the substance was extremely strong cocaine. This assignment of error is overruled.

V

[4] Defendants next contend that the trial judge erred by admitting the Ramada Inn telephone records in evidence. They argue that the State failed to demonstrate the trustworthiness of the records.

The telephone records of the Ramada Inn were admitted under Rule 803(6), the business records exception, of the North Carolina Rules of Evidence. The records were introduced through the testimony of Greg Clark who was employed as a "front office person" at Ramada Inn during October 1986. Clark testified that the records were produced by a machine installed for that purpose by the telephone company. The machine registered the room number from which each call from the hotel was made, the time the call began and ended, and the phone number that was called. Other hotel personnel had access to the records, and Clark had no idea when the machine was last checked for maintenance.

We do not subscribe to the view urged by defendants that the records were untrustworthy simply because they were recorded by a machine as opposed to a person. *See State v. Springer*, 283 N.C. 627, 197 S.E. 2d 530 (1973) (computer printout cards are admissible as business records so long as the foundation shows trustworthiness). We are troubled, however, by the fact that the machine's accuracy had not been verified. Thus, we hold that the foundation was insufficient to admit the evidence as business records. Nevertheless, there was substantial circumstantial evidence which indicated that defendant Beaton was communicating with defendant Agudelo and Luis Otero. Soon after defendant Beaton placed a telephone call in Rodriguez's presence, he gave Rodriguez a note advising him where to find defendant Agudelo to receive the cocaine. Thus the error was harmless.

VI

[5] Defendants next contend that the trial judge erred by joining their cases for trial. Defendants argue that they were prejudiced

because evidence was admitted against one of them which was inadmissible against the other. Specifically, defendant Beaton contends he was prejudiced by the admission of evidence seized from defendant Agudelo's hotel room, and both contend each was prejudiced by the admission of hearsay that was admissible only against the other.

The trial judge has broad discretion in ruling on the matter of severance. *State v. Slade*, 291 N.C. 275, 229 S.E. 2d 921 (1976); *State v. Brower*, 289 N.C. 644, 224 S.E. 2d 551 (1976). The test for determining whether a trial judge abused his discretion is "whether the conflict in defendants' respective positions at trial is of such a nature that, considering all of the other evidence in the case, defendants were denied a fair trial." *State v. Nelson*, 298 N.C. 573, 587, 260 S.E. 2d 629, 640 (1979), *cert. denied*, 446 U.S. 929 (1980).

In the instant case, defendants were charged with conspiracy and other related crimes. The activities of each of them and the other participants in furtherance of the conspiracy were admissible against them both. Thus, evidence seized in defendant Agudelo's room was likewise admissible against both defendants. Although the transcript contains a few hearsay statements, in light of the great abundance of the evidence and the intricacy of the operation, we hold that the trial judge did not abuse its discretion in this case. This assignment of error is overruled.

## VII

[6] Defendant Beaton alone next contends that the trial judge erred in admitting, over his objection, testimony concerning the discovery of drug paraphernalia in the motel room occupied by Rodriguez and Chandros. Defendant argues that the evidence was irrelevant. We agree. However, Rodriguez had testified previously, without objection, that he used cocaine in his hotel room and that he received a small amount of cocaine from defendant Beaton earlier in the day. Thus, any harm caused by the inadmissible evidence was negligible. In light of all the evidence, we do not believe defendant was prejudiced by the erroneously admitted evidence.

## VIII

**[7]** Defendants next contend that the trial judge erred by failing to conduct a proper inquiry into the prosecutor's motives for exercising peremptory challenges to exclude prospective black jurors. Defendant Beaton objected to the exclusion of blacks from the venire. After hearing the prosecutor's explanations, the trial judge overruled the objection. The prosecutor proceeded to excuse more blacks and defendant objected again. The trial judge then ruled that because defendants were Hispanic, not black, they were not entitled to challenge the exclusion of blacks under *Batson v. Kentucky*, 476 U.S. 79, 90 L.Ed. 2d 69 (1986) or *State v. Cofield*, 320 N.C. 297, 357 S.E. 2d 622 (1987).

Defendants argue, that notwithstanding their inability to raise an Equal Protection challenge to the jury selection process, the Sixth Amendment to the U.S. Constitution guarantees an impartial jury to all citizens and that this guarantee gives standing to all defendants to challenge the use of peremptory challenges to exclude prospective jurors based solely on race. Moreover, defendants argue, the North Carolina Constitution, in Article I, Sections 19 and 26, mandates fairness and equality in the jury selection process. See *Cofield.* The question whether defendants may raise a Sixth Amendment challenge to the racially motivated exercise of peremptory challenges is an open one. See *Teague v. Lane*, 820 F. 2d 832 (7th Cir. 1987), *cert. granted*, --- U.S. ---, --- L.E. 2d --- (No. 87-5259, March 7, 1988). Indeed, the degree to which the North Carolina Constitution constrains racially motivated use of peremptory challenges in this case is open as well. Only two justices addressed this issue in *Cofield.* In his opinion concurring in the result, Justice Mitchell, joined by Justice Whichard, said:

> . . . Nor do I believe that the people intended that, in order to raise questions concerning alleged violations of this section, a person must be a member of any cognizable racial or ethnic group. Instead, the intent of the people of North Carolina was to guarantee *absolutely unto themselves* that in *all* cases *their* system of justice would be free of both the reality and the appearance of racism, sexism and other forms of discrimination in these twilight years of the Twentieth Century. (Emphasis in original.)

320 N.C. at 310, 357 S.E. 2d at 630.

However, even if defendants had standing to raise such an issue, defendants would have the threshold requirement of making a *prima facie* showing that exclusion was based on race. *See, e.g., McCray v. Abrams*, 750 F. 2d 1113 (2d Cir. 1984), *cert. denied*, 471 U.S. 1097, 85 L.Ed. 2d 837 (1985). The record here is inadequate for us to address this issue. The record does not show the racial composition of the jury, the number of blacks who were excluded, nor the extent to which the excluded jurors were otherwise qualified to serve.

This assignment of error is overruled.

### IX

**[8]** Defendant Agudelo finally contends that the trial judge erred in admitting the evidence seized from his motel room and automobile because the search warrant was not based on probable cause. Defendant argues that the affidavit on which the warrant was based was insufficient because nothing in the warrant attested to the reliability of the informant. We disagree. The warrant was obtained during a continuing investigation after the informant, Chandros, was taken into custody for her participation in the suspected crime. Such statements have inherent indicia of reliability. *See U.S. v. Harris*, 403 U.S. 573, 29 L.Ed. 723 (1971); *State v. Arrington*, 311 N.C. 633, 319 S.E. 2d 254 (1984). This assignment is overruled.

In summary, we vacate the second conspiracy conviction against each defendant; we find no other prejudicial error.

Judgment is vacated in part.

Judges EAGLES and COZORT concur.