STATE OF NORTH CAROLINA
v.
DAMIAN D. JACKSON

No. COA12-1533

Filed 17 September 2013

1. **Evidence—admission of testimony and records—business record—lay witness—not unduly prejudicial**

   The trial court did not err in an assault, sexual battery, larceny from the person, and second-degree sexual offense case by admitting testimony and evidence of GPS tracking based on data from the electronic monitoring device worn by defendant. The GPS tracking evidence was properly admitted as a business record, Sergeant Scheppegrell's testimony was properly admitted as testimony of a lay witness based on his perception of the data, and the evidence was not unduly prejudicial pursuant to N.C.G.S. § 8C-1, Rule 403.

2. **Identification of Defendants—show-up identification—impermissibly suggestive—sufficient aspects of reliability—in-court identification admissible**

The trial court did not plainly err in an assault, sexual battery, larceny from the person, and second-degree sexual offense case by admitting evidence concerning an out-of-court "showup" identification of defendant. Although the identification was impermissibly suggestive, it possessed sufficient aspects of reliability to outweigh the suggestiveness of the identification procedures. Furthermore, defendant's argument that an in-court identification did not have an origin independent of the prior out-of-court identification was meritless.

3. **Constitutional Law—effective assistance of counsel—no deficient performance**

Defendant did not receive ineffective assistance of counsel in an assault, sexual battery, larceny from the person, and second-degree sexual offense case. The trial court did not err in admitting the evidence challenged on appeal and defense counsel's performance was not deficient.

Appeal by defendant from judgments entered 27 July 2012 by Judge F. Lane Williamson in Mecklenburg County Superior Court. Heard in the Court of Appeals 8 May 2013.

*Attorney General Roy Cooper, by Assistant Attorney General Sarah Y. Meacham, for the State.*

*Assistant Public Defender Julie Ramseur Lewis for defendant appellant.*

McCULLOUGH, Judge.

Damian D. Jackson ("defendant") appeals from his convictions for simple assault, sexual battery, larceny from the person, and second-degree sexual offense. For the following reasons, we find no error.

## I. BACKGROUND

Defendant was indicted by a Mecklenburg County Grand Jury on 24 August 2009 for one count each of simple assault, sexual battery, larceny from the person, and second-degree sexual offense. Defendant's case came on for jury trial on 25 July 2012, during the Criminal Session of

Mecklenburg County Superior Court, the Honorable F. Lane Williamson presiding. The State's evidence at trial tended to show the following.

At approximately 10:40 p.m. on 30 July 2009, the victim left her home on Blue Hampton Lane and walked up Kingville Drive in search of someone with a cigarette. When the victim noticed no one outside, the victim turned around to walk home. As the victim walked back down Kingville Drive towards Blue Hampton Lane, a "[b]lack male" with "dreadlocks" (the "assailant") approached the victim from behind in the 600 block of Kingville Drive. The assailant first asked the victim if she had a man. The victim responded that she did. The assailant then touched the victim on the butt. The victim told the assailant not to touch her, but the assailant continued to walk beside her and touched her butt a second time. At that point, the victim told the assailant that she was going to call the police. The assailant then pushed the victim to the ground. While on top of the victim, the assailant put his hands under the victim's shirt and down the victim's pants. The victim testified that the assailant inserted several fingers into her vagina as far as they would go and touched her breasts. During the assault the victim fought back against the assailant by biting, punching, and yelling for help.

The assailant's assault of the victim ended when the assailant jumped up, grabbed the victim's phone, and ran away. At that time, the victim ran in the opposite direction to a neighbor's house and called the police. The police responded within 10 minutes.

Once the police arrived, the victim informed the police of the sexual assault and described the assailant as a black male with dreadlocks, about 5 feet 9 inches tall, wearing a white tank top and gray sweat pants. Soon thereafter, a woman approached the police on the scene with additional information. The woman informed the police that she had heard a woman scream as she was walking down Kingville Drive and then saw a black male running through the woods and a black female walking out of the woods. The woman informed police that the black male looked similar to her neighbor and directed them to a residence at 416 Kingville Drive.

Following the tip, the police responded to 416 Kingville Drive and found defendant, who was wearing an electronic monitoring device. Due to the similarity between the description of the assailant provided by the victim and defendant's appearance, the police performed a "showup" identification. The showup, which took place approximately one hour after the assault, resulted in a positive identification of defendant by the victim. Defendant was then arrested.

In addition to the testimony from the victim and responding officers concerning the events that transpired on 30 July 2009, the victim identified defendant as the assailant a second time at trial and the State introduced evidence from defendant's electronic monitoring device in order to place defendant at the scene of the assault.

On 27 July 2012, the jury returned verdicts finding defendant guilty of simple assault, sexual battery, larceny from the person, and second-degree sexual offense. Thereafter, judgments were entered sentencing defendant to consecutive terms totaling 102 to 133 months' imprisonment; a term of 96 to 125 months' imprisonment for the second-degree sexual offense conviction and a consecutive term of 6 to 8 months' imprisonment for the remaining convictions that were consolidated for judgment. In addition, the trial court ordered defendant to register as a sex offender and enroll in satellite-based monitoring, both for the remainder of his natural life, upon release from prison. Defendant gave notice of appeal in open court.

## II. ANALYSIS

Now on appeal, defendant contends that the trial court committed plain error by admitting: (1) testimony and evidence of GPS tracking based on data from the electronic monitoring device worn by defendant; and (2) out-of-court and in-court identifications of defendant by the victim. Additionally, defendant contends that, to the extent his counsel failed to object to the admission of the tracking evidence and the identifications, he was denied the effective assistance of counsel.

### Standards of Review

In regard to defendant's assertions of plain error, "[i]n criminal cases, an issue that was not preserved by objection noted at trial . . . may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C.R. App. P. 10(a)(4); *see also State v. Goss*, 361 N.C. 610, 622, 651 S.E.2d 867, 875 (2007). The North Carolina Supreme Court "has elected to review unpreserved issues for plain error when they involve either (1) errors in the judge's instructions to the jury, or (2) rulings on the admissibility of evidence." *State v. Gregory*, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996). Plain error arises when the error is " 'so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]' " *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982)). "Under the plain error rule, defendant must convince this Court not only

that there was error, but that absent the error, the jury probably would have reached a different result." *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993).

In regard to defendant's claims of ineffective assistance of counsel, "[i]t is well established that ineffective assistance of counsel claims 'brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required . . . .' " *State v. Thompson*, 359 N.C. 77, 122-23, 604 S.E.2d 850, 881 (2004) (quoting *State v. Fair*, 354 N.C. 131, 166, 577 S.E.2d 500, 524 (2001)). "To prevail on a claim of ineffective assistance of counsel, a defendant must first show that his counsel's performance was deficient and then that counsel's deficient performance prejudiced his defense." *State v. Allen*, 360 N.C. 297, 316, 626 S.E.2d 271, 286 (2006).

## Evidence of Tracking

Expanding on the background above, at trial, the State called Sergeant Dave Scheppegrell ("Sgt. Scheppegrell") to testify concerning the electronic monitoring device worn by defendant and the data produced by that device. Sgt. Scheppegrell testified that he is the supervisor of the electronic monitoring unit of the Charlotte-Mecklenburg Police Department ("CMPD") and has been a member of the unit since he started it in 2007. Sgt. Scheppegrell further testified that he received training from the vendors of the electronic monitoring devices used by the CMPD and from the National Institute of Justice in the electronic monitoring field. Moreover, Sgt. Scheppegrell noted that he was appointed to the National Standard Developing Committee to develop a national standard for the electronic monitoring industry.

Regarding the specific electronic monitoring device worn by defendant, Sgt. Scheppegrell identified the device as the Omni-Link 210, manufactured by Omni-Link Systems, and described the different components of the device. Sgt. Scheppegrell then testified about how the device operates using a combination of GPS signals and cell phone triangulations to track the location of the electronic monitoring device at least every four minutes. The tracking data is then uploaded from the device to a secured server where it is stored. Sgt. Scheppegrell explained that the device primarily uses GPS signals, which are very accurate, usually within four to ten meters. However, when a GPS signal is unavailable, the device uses cell phone triangulations, which are accurate within forty to fifty meters. Sgt. Scheppegrell testified that he can view the data stored on the secured server via a web service and produce reports based on the data, and routinely does so in the normal

course of business. Sgt. Scheppegrell has never had any issue with the accuracy of the data.

Regarding the evidence admitted in this case, Sgt. Scheppegrell described how he retrieved the data for defendant's electronic monitoring device for 28 July 2009 through 31 July 2009 and produced the event log entered into evidence as the State's Exhibit 15. Sgt. Scheppegrell also explained how he used Omni-Link software to produce a video file plotting the tracking data for defendant on the evening of 30 July 2009 from 10:00 p.m. to midnight. The video file contained a sequence of twenty tracking points, each three minutes apart. Sgt. Scheppegrell testified that the video file stored on a CD was a fair and accurate representation of the tracking data and the CD was then admitted into evidence as the State's Exhibit 16 ("Exhibit 16"). As the video file was shown at trial, Sgt. Scheppegrell testified as to certain tracking points in the sequence.

[1] Now on appeal, defendant contends that the trial court plainly erred in admitting testimony and evidence of tracking based on data from the electronic monitoring device worn by defendant. We disagree.

Defendant first argues the GPS tracking evidence was not properly authenticated and was inadmissible hearsay. We disagree and hold the GPS tracking evidence was properly admitted as a business record.

"Hearsay" is defined in the North Carolina Rules of Evidence as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2011). Although generally inadmissible at trial, hearsay may be allowed by statute or the North Carolina Rules of Evidence. N.C. Gen. Stat. § 8C-1, Rule 802 (2011). N.C. Gen. Stat. § 8C-1, Rule 803(6) establishes an exception to the general exclusion of hearsay for business records. A business record includes:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association,

profession, occupation, and calling of every kind, whether or not conducted for profit.

N.C. Gen. Stat. § 8C-1, Rule 803(6) (2011).

Business records stored electronically are admissible if

> "(1) the computerized entries were made in the regular course of business, (2) at or near the time of the trans-action involved, and (3) a proper foundation for such evidence is laid by testimony of a witness who is famil-iar with the computerized records and the methods under which they were made so as to satisfy the court that the methods, the sources of information, and the time of preparation render such evidence trustworthy."

*State v. Crawley*, ___ N.C. App. ___, ___, 719 S.E.2d 632, 637 (2011) (quoting *State v. Springer*, 283 N.C. 627, 636, 197 S.E.2d 530, 536 (1973)). "There is no requirement that the records be authenticated by the per-son who made them." *State v. Wilson*, 313 N.C. 516, 533, 330 S.E.2d 450, 462 (1985).

At the outset, we hold that the tracking data from the electronic monitoring device worn by defendant stored on the secured server is a data compilation and that Exhibit 16, the CD containing the video file plotting the data from defendant's electronic monitoring device on the evening of 30 July 2009, is merely an extraction of that data produced for trial. Thus, Exhibit 16 was properly admitted as a business record if the tracking data was recorded in the regular course of business near the time of the incident and a proper foundation is laid.

On appeal, defendant does not dispute that the data from defen-dant's electronic monitoring device was recorded in the regular course of business near the time of the incident. Instead, defendant's primary contention concerning the admissibility of the tracking evidence is that the State failed to establish a proper foundation to verify the authentic-ity and trustworthiness of the data. Citing *Ruise v. Florida*, 43 So. 3d 885 (Fla. Dist. Ct. App. 2010) (holding a sufficient foundation was laid to admit tracking data from a defendant's electronic monitoring device where an employee of the monitoring company testified how the device operated and a probation officer testified the accuracy of the device had been verified) and *State v. Agudelo*, 89 N.C. App. 640, 645, 366 S.E.2d 921, 924 (1988) (holding there was an insufficient founda-tion to admit telephone records under the business records exception to the hearsay rule where the accuracy of a machine that recorded call

information had not been verified), defendant asserts it was necessary for the State to elicit testimony to verify the accuracy of the electronic monitoring data.

As described above, Sgt. Scheppegrell established his familiarity with the GPS tracking system by testifying about his experience and training in the field of electronic monitoring. Sgt. Scheppegrell then testified concerning how the electronic monitoring device worn by defendant transmits data to a secured server where the data was stored and routinely accessed in the normal course of business. Sgt. Scheppegrell then explained how, in this particular instance, he accessed the tracking data for defendant's electronic monitoring device and produced Exhibit 16 for trial. According to Sgt. Scheppegrell, producing reports such as Exhibit 16 was normal in the course of business.

As we have recognized, "[t]rustworthiness is the foundation of the business records exception." *State v. Miller*, 80 N.C. App. 425, 429, 342 S.E.2d 553, 556 (1986). We hold Sergeant Scheppegrell's testimony established a sufficient foundation of trustworthiness for the tracking evidence to be admitted as a business record. Furthermore, assuming *arguendo*, that Sgt. Scheppegrell's testimony was insufficient to lay a proper foundation and authenticate the tracking evidence, we find it likely that, had defendant objected to the admission of the tracking evidence at trial, the State could have produced additional testimony to overcome the objection. As a result, the insufficiency of foundation does not amount to plain error. *See State v. Jones*, 176 N.C. App. 678, 627 S.E.2d 265 (2006) (holding failure to lay a proper foundation for introduction of video surveillance into evidence did not amount to plain error where the State could have supplied the necessary foundation had defendant objected). Moreover, we note that defendant did not dispute the reliability of the tracking evidence at trial, but instead used the tracking data on cross-examination of Sgt. Scheppegrell to show that the tracking data never placed defendant within 325 feet of the location where the assault occurred. Where defendant attempted to use the tracking data to his advantage, we will not hold the trial court plainly erred in admitting it into evidence.

In addition to arguing the GPS evidence was improperly admitted into evidence, defendant argues that Sergeant Scheppegrell's testimony concerning the GPS data was inadmissible as lay witness testimony and expert witness testimony. We disagree and hold Sergeant Scheppegrell's testimony was properly admitted as testimony of a lay witness based on his perception of the data.

N.C. Gen. Stat. § 8C-1, Rule 602 provides that a witness may testify to a matter to which he has personal knowledge.

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

N.C. Gen. Stat. § 8C-1, Rule 701 (2011).

At trial, Sgt. Scheppegrell testified regarding the operation of the electronic monitoring device and tracking data retrieved from the secured server. When questioned about specific tracking points in the sequence of points mapped in Exhibit 16, Sgt. Scheppegrell identified the date, time, accuracy reading, and relative location of the tracking points. We hold this testimony by Sgt. Scheppegrell was rationally based on his perception of the tracking data, not Sgt. Scheppegrell's personal knowledge as to defendant's actual location. Nonetheless, we find the testimony helpful to a clear understanding of defendant's whereabouts around the time of the assault on 30 July 2009. We find this holds true even in the single instance where Sgt. Scheppegrell testified as to defendant's location instead of the location of the tracking point stating, "In my professional opinion, at 10:42 P.M., [defendant] was on Aerial Court." As a result, we hold the testimony based on the tracking data was properly admitted as lay witness testimony.

Defendant's final argument concerning the admissibility of Sgt. Scheppegrell's testimony is that it was highly prejudicial and should have been excluded by the trial court pursuant to N.C. Gen. Stat. § 8C-1, Rule 403. N.C. Gen. Stat. § 8C-1, Rule 403 provides, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . or misleading the jury . . . ." Specifically, defendant contends Sgt. Scheppegrell's testimony was highly prejudicial and likely to mislead the jury "because of the aura of reliability incident to his testimony as a skilled, experienced officer."

Upon review of defendant's argument, we hold the trial court did not err by admitting the evidence. The trial court does abuse its discretion under N.C. Gen. Stat. § 8C-1, Rule 403, simply because the testimony was provided by a skilled, experienced officer. Moreover, we find Sgt. Scheppegrell's testimony highly probative of defendant's whereabouts around the time of the assault.

## Identifications

**[2]** On appeal, defendant also contends that the trial court plainly erred in admitting evidence concerning the out-of-court "showup" identification because the identification was impermissibly suggestive and violated his due process rights. We disagree and hold defendant's due process rights were not violated by the admission of the identification.

"Due process forbids an out-of-court confrontation which is so unnecessarily 'suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' " *State v. Leggett*, 305 N.C. 213, 220, 287 S.E.2d 832, 837 (1982) (quoting *Simmons v. United States*, 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 1253 (1968)). "If an out-of-court identification procedure is so suggestive that it leads to a substantial likelihood of misidentification, the out-of-court identification is inadmissible." *State v. Oliver*, 302 N.C. 28, 45, 274 S.E.2d 183, 194-95 (1981).

As both defendant and the State recognize, "[s]how-ups, the practice of showing suspects singly to witnesses for purposes of identification, have been criticized as an identification procedure by both [the N.C. Supreme Court] and the U.S. Supreme Court." *State v. Turner*, 305 N.C. 356, 364, 289 S.E.2d 368, 373 (1982) (citing *Stovall v. Denno*, 388 U.S. 293, 18 L. Ed. 2d 1199 (1967); and *Oliver*, 302 N.C. 28, 274 S.E.2d 183 (1980)[1]). As our Supreme Court explained, "such a procedure . . . may be 'inherently suggestive' because the witness 'would likely assume that the police had brought [him] to view persons whom they suspected might be the guilty parties.' " *Oliver*, 302 N.C. at 45, 274 S.E.2d at 194 (quoting *State v. Matthews*, 295 N.C. 265, 285-86, 245 S.E.2d 727, 739 (1978). Nevertheless, "[p]retrial show-up identifications . . . , even though suggestive and unnecessary, are not *per se* violative of a defendant's due process rights." *Turner*, 305 N.C. at 364, 289 S.E.2d at 373. "The test under the due process clause as to pretrial identification procedures is whether the totality of the circumstances reveals pretrial procedures so unnecessarily suggestive and conducive to irreparable mistaken identification as to offend fundamental standards of decency, fairness and justice." *State v. Henderson*, 285 N.C. 1, 9, 203 S.E.2d 10, 16 (1974), *death penalty vacated*, 428 U.S. 902, 49 L. Ed. 2d 1205 (1976).

> In evaluating such claims of denial of due process, this Court employs a two-step process. First, we must

---

1. In *Turner, Oliver* is incorrectly cited as filed in 1980. As cited, *supra, Oliver* was filed in 1981.

determine whether an impermissibly suggestive procedure was used in obtaining the out-of-court identification. If this question is answered in the negative, we need inquire no further. If it is answered affirmatively, the second inquiry we must make is whether, under all the circumstances, the suggestive procedures employed gave rise to a substantial likelihood of irreparable misidentification.

*State v. Leggett,* 305 N.C. at 220, 287 S.E.2d at 837.

In the present case, the victim was told by police that they "believed they had found the suspect" and was then taken in a patrol car to 416 Kingville Drive where defendant was standing in the front yard with police officers. With a light shone on defendant, the victim then identified defendant as the perpetrator from the patrol car. As we have held in cases addressing similar showup identifications, *see State v. Rawls,* 207 N.C. App. 415, 423-24, 700 S.E.2d 112, 118 (2010), we hold the showup identification in this case impermissibly suggestive.

Nevertheless, as explained above, a holding that the showup identification was impermissibly suggestive does not end our inquiry. "An unnecessarily suggestive show-up identification does not create a substantial likelihood of misidentification where under the totality of the circumstances surrounding the crime, the identification possesses sufficient aspects of reliability." *Turner,* 305 N.C. at 364, 289 S.E.2d at 373.

The factors to be considered in evaluating the likelihood of irreparable misidentification include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.

*State v. Grimes,* 309 N.C. 606, 609-10, 308 S.E.2d 293, 294-95 (1983). " 'Against these factors is to be weighed the corrupting effect of the suggestive identification itself.' " *Turner,* 305 N.C. at 365, 289 S.E.2d at 374 (quoting *Manson v. Brathwaite,* 432 U.S. 98, 114, 53 L. Ed. 2d 140, 154 (1977)).

Considering the above factors, we find the showup identification in the present case possessed sufficient aspects of reliability to outweigh the suggestiveness of the identification procedures.

Despite the facts that it was dark and the assault on the victim lasted only 5 minutes, the victim had the opportunity to view her assailant while he walked beside her and spoke to her, and while he was on top of her during the assault. From her observations of the assailant, the victim was able to describe the assailant to police as a black male with dreadlocks, about 5 feet 9 inches tall, wearing a white tank top and gray sweat pants. Although defendant was not dressed exactly as described by the victim, defendant largely matched the description of the assailant the victim provided to the police. Furthermore, the showup identification in this case occurred shortly after the assault, approximately one hour, and the victim testified that she was one hundred percent certain that defendant was the assailant.

"[A]lthough the discrepancy between [the victim's] description and defendant's attire detracts from the reliability of the identification, other factors—including her certainty, her ability to view him directly from a short distance, and the short window between the crime and the identification—substantially bolster it." *State v. Rawls*, 207 N.C. App. at 425, 700 S.E.2d at 119. Thus, considering the totality of the circumstances, we hold the trial court did not err in admitting evidence of the out-of-court showup identification at trial.

In addition to challenging the out-of-court showup identification, defendant contends that the trial court erred in admitting the victim's subsequent in-court identification of defendant on the ground that the in-court identification did not have an origin independent of the prior out-of-court identification.

> When the pre-trial investigatory identification procedures have created a likelihood of irreparable misidentification, neither the pre-trial procedures nor an in-court identification is admissible. Stated another way, in-court identifications are permissible only if the out-of-court suggestiveness was *not* conducive to irreparable mistaken identity. In this jurisdiction, this often meant that the in-court identification was admissible if the state could show that the in-court identification was of independent origin from the suggestive pre-trial procedures.

*State v. Oliver*, 302 N.C. at 45, 274 S.E.2d at 194 (internal quotation marks and citations omitted).

Having determined that the trial court did not err in admitting evidence of the out-of-court identification, we hold defendant's

argument that the trial court erred in admitting the in-court identification is meritless.

## Ineffective Assistance of Counsel

[3] In addition to asserting the trial court plainly erred in admitting the tracking evidence and identifications of defendant at trial, defendant argues that, to the extent his trial counsel failed to object to the admission of the evidence, he received ineffective assistance of counsel. Defendant's arguments are overruled. It is axiomatic that, having determined the trial court did not err in admitting the evidence challenged on appeal, defense counsel's performance was not deficient.

## III. CONCLUSION

For the reasons discussed above, we find the trial court did not err, much less plainly err, in admitting the testimony and evidence of GPS tracking and the identifications of defendant. Moreover, where the challenged evidence was properly admitted at trial, failure by defense counsel to object did not deprive defendant of effective assistance of counsel. Accordingly, we find no error below.

No error.

Judges CALABRIA and STEELMAN concur.