IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-718

Filed 19 March 2025

Jackson County, No. 23CRS264

STATE OF NORTH CAROLINA

v.

DAVID ADAM WINDSETH, Defendant.

Appeal by David A. Windseth from judgment entered 4 January 2024 by Judge Gregory R. Hayes in Jackson County Superior Court. Heard in the Court of Appeals 11 February 2025.

*Attorney General Jeff Jackson, by Assistant Attorney General Kristin Cook McCrary, for the State.*

*Attorney Stephen D. Fuller, for Defendant–Appellant*

MURRY, Judge.

Defendant appeals from judgment entered upon jury verdicts finding him guilty of felony obtaining property by false pretenses and felony identity fraud under N.C.G.S. §§ 14-100 and 14-113.20, respectively. For the reasons below, we affirm.

## I.  Background

David A. Windseth (Defendant) appeals his jury convictions for one count of felony obtaining property by false pretenses under N.C.G.S. § 14-100 and felony identity fraud under N.C.G.S. § 14-113.20. N.C.G.S. § 14-100(a) (false pretenses); *id.* § 14-113.20(a) (identity fraud).

On or about January 2022, Defendant's mother, Joanna Windseth, went missing. Sergeant Ronald E. Ferris ("officer" or "Ferris") of the Jackson County Sheriff's Office soon began investigating her disappearance. As part of the investigation, Ferris reviewed visual information about her immediate family (including Defendant) and went so far as to set up a camera just outside her driveway in July 2022. The officer contemporaneously subpoenaed Ms. Windseth's bank, Wells Fargo, for her account information in the hopes of electronically tracking her possible whereabouts. In response, Wells Fargo returned a "business records declaration" detailing this information alongside certain relevant boilerplate language:

### BUSINESS RECORDS DECLARATION

I, [internal authenticator], . . . declare that I am employed by Wells Fargo . . . and . . . certify that the attached records:

A) Were prepared by personnel of Wells Fargo in the ordinary course of business at or near the time of . . . events described [there]in . . . ;[ ]

B) [Were made in] the ordinary course of business [by] Wells Fargo employees . . . with knowledge of the . . . event[ ] . . . recorded . . . [; and]

C) . . . [A]re true and correct copies of the business records as maintained by Wells Fargo.

**The records produced are described as follows:**

| Document Type | Account # |
| --- | --- |
| . . . . | |
| Video ATM / DVD | XXXXXX4130 |
| . . . . | |
| Video ATM / DVD | XXXXXX2831 |
| . . . . | |

I declare under penalty of perjury under the law(s) of the state of North Carolina that the foregoing is true and correct according to my knowledge and belief. Executed on . . . [1 September 2022][ ] in . . . Charlotte, [N.C.].

Upon reviewing the two ATM videos showing Defendant withdraw money from his mother's bank accounts, Ferris recognized and began searching for Defendant. The Sheriff's Office eventually found Defendant camping on 20 August 2022, at which point they discovered on his person multiple credit and debit cards belonging to his mother.

At trial, the State offered as evidence several still-shots from the videos. Officer Ferris identified Defendant as the individual withdrawing his mother's funds in these videos, both of which he testified to leaving unaltered. The officer also identified Franklin, N.C. as their locations. Defendant's counsel did not contemporaneously object to either the evidentiary authentication or testimonial admission. On 1 January 2024, the jury found Defendant guilty on both felony counts. On 5 January 2024, Defendant timely appealed to this Court.

## II. Jurisdiction

This Court has jurisdiction to hear Defendant's appeal of his jury-trial convictions because they arose after he first "entered . . . plea[s] of not guilty to [the] criminal charge[s]." N.C.G.S. § 15A-1444(a) (2023).

## III. Analysis

Defendant argues on appeal that the trial court plainly erred (1) by admitting

ATM videos of Defendant even though the State failed to properly authenticate them and (2) by permitting Officer Ferris to offer his own lay-opinion testimony as to Defendant's identity in those videos. In the alternative, Defendant argues that his counsel's failure to object to either alleged error amounted to ineffective assistance of counsel (IAC) so egregious as to violate his right to counsel under the federal Sixth Amendment. We hold the trial court did not err for the reasons discussed below. We affirm the trial court on both counts and thus decline to reach the merits of his IAC claim.

## A. Video Authentication

First, Defendant argues that the trial court plainly erred by ruling that the State properly authenticated the video evidence of his ATM usage mid-theft. We disagree. Because the proper admission of a full evidentiary video impliedly admits its constituent frames, this Court holds that the trial court did not err by admitting the ATM video still-shots.[1]

---

[1] We note an apparent conflict among our precedents on whether to review issues of evidence authentication *de novo* or for an abuse of discretion. *State v. Hollis*, 905 S.E.2d 265, 267 (N.C. App. Ct. 2024). *Compare State v. Jones*, 288 N.C. App. 175, 187 (2023) (reviewing *de novo*), *and State v. Clemons*, 274 N.C. App. 401, 409 (2020) (Murphy, J, unanimous in result only) (holding that "appropriate standard of review for authentication of evidence is *de novo*"), *with In re Goddard & Peterson, PLLC*, 248 N.C. App. 190, 198 (2016) (reviewing for abuse of discretion), *and State v. Mobley*, 206 N.C. App. 285, 288–89 (2010) (affirming trial court's denial of defendant's "objection to the evidence on the grounds . . . [of] authenticat[ion]" despite noting how our previous "cases . . . conflict[ ] as to the appropriate standard of review"). Because the trial court here did not err, however, we need not attempt to resolve that intra-panel split now. *See In re Lucks*, 369 N.C. 222, 231 (2016) (Hudson, J., concurring) (declining to further opine on "which standard of review should apply because the result would be the same under either standard")

Under N.C.G.S. § 8-97, the State may introduce a recorded video "as substantive evidence" if it can first "lay[ ] a proper foundation and meet[ ] other applicable evidentiary requirements." N.C.G.S. § 8-97 (2023). It may lay a proper foundation in relevant part by adducing "testimony that the videotape had not been edited[ ] and that the picture fairly and accurately recorded the actual appearance of the area photographed." 14 N.C. Index 4th *Evidence* § 1635 (2024). The North Carolina Rules of Evidence (Rules) specify certain types of evidence and procedures that may satisfy any additional requirements. *E.g.*, N.C. R. Evid. Rule 803(6) (business records); *id.* 902 (self-authenticating documents).

Specifically, Rule 901 is a "main evidentiary requirement" that permits admission with a showing of "evidence sufficient to support a finding that the matter in question is what the proponent claims." *State v. Jones*, 288 N.C. App. 175, 187 (2023) (quoting N.C. R. Evid. 901(a)). "Records of [r]egularly [c]onducted [a]ctivity," N.C. R. Evid. 803(6), "made under penalty of perjury" also "fulfill the purpose of authentication," *State v. Hollis*, 905 S.E.2d 265, 271 (N.C. App. Ct. 2024). Because Rule 803 and 901's languages match those of their federal counterparts in all material respects, *see* N.C. R. Evid. 803 cmt.; *id.* 901 cmt., federal courts' interpretations of the latter may inform our interpretations of the former, *see State v. Thompson*, 332 N.C. 204, 219 (1992). *Cf., e.g.*, *State v. Collins*, 216 N.C. App. 249 (2011) (finding certain "federal court cases persuasive" because federal Rule 701 "is indistinguishable from . . . [N.C. R. Evid.] Rule 701").

Faced with no controlling precedent for these facts, we instead look to an analogous *State v. Jackson*, 229 N.C. App. 644 (2013), to better frame the issue here. In *Jackson*, this Court addressed whether the trial court properly admitted a "video file plotting the data from [an] electronic monitoring device" worn by the defendant the night of his crimes. *Id.* at 650. At trial, the State introduced as unobjected evidence both "the specific electronic monitoring device" "and the data [it] produced." *Id.* at 648. On appeal, the defendant argued that the State failed to "properly authenticate[ ]" the derivative tracking data. *Id.* at 649. This Court rejected his claim and affirmed the trial court's admissions. *Id.* at 650. In so doing, we characterized the video file as "merely an *extraction of* that data compiled in the device." *Id.* (emphasis added). The "extraction was admi[ssible] as a business record" so long as its underlying "data was recorded in the regular course of business near the time of the incident" and laid upon "a proper foundation." *Id.* (emphasis added) (referencing N.C. R. Evid. 803(6)). As a threshold matter of principle, we see little difference between *Jackson*'s admission of specific location data points drawn from an unobjected GPS-monitoring device and this case's admission of specific still-shots drawn from an unobjected security video.

We find persuasive the otherwise noncontrolling reasoning of *United States v. Clotaire*, 963 F.3d 1288 (2020), which addressed this precise issue upon near-identical facts. In *Clotaire*, the defendant regularly withdrew funds from various PNC Bank ATMs with debit cards he fraudulently opened in the victims' names. *Id.* at 1292.

Noticing common traits between the identity thefts, the investigating officer subpoenaed each card's "ATM withdrawal history" and "surveillance from the bank branches" to identify and arrest the defendant. *Id.* The trial court later admitted "PNC Bank's *full* surveillance videos a[s] business[-]records" evidence under Fed. R. Evid. 803(6) without objection. *Id.* at 1293 (emphasis added). The defendant instead challenged the discrete "photo stills pulled from the video" as "not business records within the meaning" of that rule. *Id.* The Eleventh Circuit disagreed, holding that a "format change[ ]from video to photograph" does not render "an otherwise-admissible business record . . . a new, inadmissible record merely because [of] its . . . adapt[ation] for trial display." *Id.* at 1293. That appellate court reasoned that this "technical format change" requires "little human discretion or judgment" and does not alter in any way the data's "communicative content" for the jury. *Id.* at 1294. "[A]s a general rule, the format of an extracted dataset has nothing to do with whether it qualifies as a business record. What matters is whether the *original* record met the requirements of [federal] Rule 803(6)." *Id.* In reaching this conclusion, the *Clotaire* Court articulates the presumption of "a foundation . . . laid for each individual frame" of an "entire videotape . . . admitted into evidence" without objection. 44 Am. Jur. *Trials* § 79.

Here, Defendant contests on appeal only the individual still-shots from the ATM videos—not the videos themselves. We reject his challenge because those shots are just "a subset of available data" found in the larger videos. *Clotaire*, 963 F.3d at

1294. The State merely "extract[ed] . . . that data" from the Wells Fargo videos, which the trial court "properly admitted as a business record" in accordance with Rule 803(6). *Jackson*, 229 N.C. App. at 650. *First*, the State laid the proper foundation for the videos by introducing a formal "business records declaration" that the attached ATM-video files "[we]re true and correct copies of the business records as maintained by Wells Fargo." (Capitalization omitted.) The State adduced Ferris's testimony that he "made [no] alterations to the[ ] [videos]" "since [he] received th[em]." Ferris also located the ATMs seen in the video to their purported locations. *Second*, the State adhered to its "main evidentiary requirement" by adducing without objection Wells Fargo's business-records declaration "made under penalty of perjury." *Hollis*, 905 S.E.2d at 269. Black-letter law permits "the authentic[ation] of business records . . . by a witness who is familiar with them and the system under which they were made." *State v. Rupe*, 109 N.C. App. 601, 611 (1993). Thus, this Court holds that the trial court properly authenticated the ATM videos as admissible evidence because their derivative photos were "nothing more than a series of static images appearing at a given frame rate." *Clotaire*, 963 F.3d at 1294.

**B. Lay-Opinion Testimony**

Second, Defendant argues that the trial court plainly erred by allowing Ferris to testify as to Defendant's identity in the ATM videos still-shots. To support this assertion, Defendant analogizes his situation to the defendant in *State v. Belk*, 201 N.C. App. 412 (2009). There, this Court overturned a conviction on appeal because

the testifying officer had "limited contact with" the defendant prior to his arrest, thus violating Rule 701. *Id.* at 417. We review admissions of lay-opinion testimony only for an abuse of discretion absent here. *Id.* Because this case is instead more analogous to *State v. Collins*, 216 N.C. App. 249 (2011) (distinguishing *State v. Belk*), this Court holds that the trial court did not err by admitting Ferris's lay-opinion testimony.

Under Rule 701, an officer may testify as a layman only if his testimony is "(a) rationally based on [his own] perception . . . and (b) help[s] to . . . determin[e] . . . a fact in issue." N.C. R. Evid. 701. Not so in *Belk*. There, this Court reversed a defendant's felony convictions after the trial court erroneously admitted the arresting officer's lay testimony. *Id.* at 414. The State indicted the defendant for several robberies allegedly caught on camera. *Id.* At trial, the arresting officer identified the defendant in the surveillance video despite having had "limited contact with [him] and his 'very distinctive profile'" prior to testifying. *Id.* at 417. Despite the jurors' "opportunity to view the video footage on a [PC]," the officer further acknowledged the video resolution's qualitative decline from the "desktop computer in the police station" to the "large projection screen [shown] to the[m]." *Id.* In remanding for a new trial, we reasoned from these facts that the trial court had "no basis" to conclude that the officer would be "more likely than the jury" to "correctly . . . identify [the] [d]efendant as the individual in the surveillance footage." *Id.* at 418.

In *Collins*, the defendant asserted plain error in the admission of the arresting officer's lay-opinion testimony that he "was the person depicted" in an incriminating

videotape. *Id.* at 254. Comparing his situation to that in *Belk*, the *Collins* defendant suggested that his own officer "was in no better position than the jury to identify [him] as the person in the surveillance video." *Id.* at 255 (quoting *Belk*, 201 N.C. App. at 414). At trial, the arresting officer testified to "recogniz[ing] [the] defendant in the video" as a direct result of "prior dealings with him." *Id.* at 251. This Court rejected the defendant's argument and upheld the testimonial admission. *Id.* at 257. We reasoned that the officer's " 'dealings' with [the] defendant . . . mean[t] more than [the] minimal contacts" found in *Belk*. Much like those with Officer Ferris here, the *Collins* officer's multiple interactions with the defendant amounted to "a sufficient level of familiarity with [his] appearance to aid the jury in its determination." *Id.*

The superior pretrial knowledge of the *Collins* defendant's personal appearance cleared Rule 701's testimonial threshold to the same degree as with Defendant here. Officer Ferris had already dealt with Defendant prior to his investigation because his mother had gone missing on or about January 2022 —six months before Ferris received the ATM video from Wells Fargo . By the time he first saw the ATM video, Ferris had interacted with Defendant on multiple occasions as part of that preexisting investigation. These repeated interactions "mean more than [the] minimal contacts" that would otherwise not "be helpful to the jury." *Collins*, 216 N.C. App. at 257. Thus, this Court holds that the trial court did not abuse its discretion by admitting Officer Ferris's lay-opinion testimony because doing so did not "invade the province of the jury" as factfinder. *Id.* at 255 (quoting *State v. Fulton*,

299 N.C. 491, 494 (1980)).

## C. Ineffective Assistance of Counsel

Finally, Defendant argues that he received constitutionally defective assistance because his counsel failed to object to the trial court admitting ATM videos of Defendant and permitting Officer Ferris to offer his own lay-opinion testimony as to Defendant's identity in those videos. Defendant argues that counsel's failure to object to either alleged error amounted to IAC so egregious as to violate his Sixth Amendment right to counsel. Because the trial court did not err either by admitting the ATM videos or allowing Officer Ferris to offer his lay opinion, this Court dismisses Defendant's IAC claim for lack of merit.

## IV.   Conclusion

For the reasons discussed above, this Court holds that the trial court did not err either by holding as authenticated the ATM videos of Defendant or by admitting Officer Ferris's lay-opinion testimony as to his identity in them. This Court also dismisses Defendant's IAC claim as meritless.

NO ERROR.

Judges ZACHARY and CARPENTER concur.